UNITED STATES v. MANNING. See Case No. 14,672.

---

## Case No. 15,719.

### UNITED STATES v. MANTOR.

[2 Mason, 123.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1820.

CUSTOMS DUTIES — BREAKING CUSTOMS LOCKS — PENALTY.

The 54th section of the revenue collection act of 1799, c. 128 [1 Story's Laws. 620; 1

---

[1] [Reported by William P. Mason, Esq.]

Stat. 668, c. 22] respecting the breaking of locks and fastenings put on vessels by inspectors, applies to vessels in the coasting trade, as well as vessels coming from foreign ports.

[Cited in Jackson v. U. S., Case No. 7,149.]

[Error to the district court of the United States for the district of Massachusetts.]

Debt for the penalty of 500 dollars against the defendant [Tristram Mantor], master of of a coasting vessel, for suffering the locks and fastenings, put on the hatches of the vessel. by an inspector of the customs, to be broken, contrary to the 54th section of the revenue collection act of 2d March, 1799, c. 128 [1 Story's Laws, 620; 1 Stat. 668, c. 22]. The defendant pleaded nil debet, on which issue was joined. At the trial, the vessel was proved to be a coasting vessel, and at the time when the facts alleged in the declaration took place, had recently arrived from North-Carolina into Boston, having on board a cargo of coals, flour, and about 20 boxes of Havana sugar. The defence at the trial did not turn upon a denial of the facts; but upon the ground that the 54th section of the act applied only to vessels arriving from foreign ports, and not to vessels engaged in the coasting trade of the United States. The district judge at the trial, was of this opinion, and so directed the jury, who found a verdict accordingly for the defendant. [Case unreported.] The district attorney filed a bill of exceptions to this opinion of the judge, and the present writ of error was brought to revise it.

Mr. Blake, for the United States, argued that the 54th section was general in its terms, and was applicable to all vessels; and the security of the revenue required this interpretation; and so it had always in practice been construed. He agreed that some of the sections of the revenue act of 1799, c. 128 [1 Story's Laws. 620; 1 Stat. 668, c. 22], applied solely to vessels coming from foreign ports; but contended that others applied to all vessels. He instanced particularly, the 37th. 53d. 55th. 57th, 67th, 70th. and 71st sections of the act.

Mr. Barrell, for defendant, argued e contra that the 54th section was exclusively applicable to vessels coming from foreign ports. That all the sections of the act of 1799, c. 128, were confined to such vessels, except where coasting vessels were particularly specified. He cited. as particularly applicable to vessels of this description, the 26th, 27th, 28th, 29th, 31st, and 33d sections of the act. In the 18th section of the act, coasting vessels were expressly specified, and a provision made in the cases contemplated in that section for fastenings and locks to the hatches of coasting vessels. Why this particular provision, if the 54th section applied generally? The coasting act of February 18, 1793. c. 8 [1 Stat. 305], contained provisions applicable to coasting vessels in the predicament of that at the bar; and by the act of March 2, 1819, c. 48 [3

Stat. 492], such vessels were liable to the same regulations as coasting vessels bound from one district to another in the same state, or from a district in one state to a district in the next adjoining state. These regulations govern the whole coasting trade, and are sufficient for the protection of the revenue. If not it belongs to the government, and not to courts of justice to enlarge them. No officer of the customs, under the coasting act of 1793, or any other act, has any right to put locks and fastenings on the hatches of coasting vessels, except in the special cases in the 18th section of the revenue act of 1799, c. 128. The 27th section of the coasting act of 1793, c. 8, as to the authority of officers of the customs to search and examine and seize vessels, is in pari materia with the 70th section of the revenue act of 1799, c. 128. So the 31st section of the same coasting act with part of the 71st section of the revenue act of 1799, as to obstruction of officers in their duty.

Mr. Blake, in reply. The revenue act of 1799, c. 128, contains many sections applicable to all vessels. It is posterior to the coasting act of 1799, c. 128, and in many cases the provisions of the former are cumulative upon the other. The letter of the 54th section is completely up to our case. Why should it not then be held to be within its spirit?

STORY, Circuit Justice. This is a case of no inconsiderable embarrassment and difficulty, and I have hesitated upon it after a good deal of reflection. The decision to which my mind has at last come, is not without some lurking doubts, but it is that to which my judgment persuades me. The judgment of the district court turned on the general proposition that coasting vessels were under no circumstances within the purview of the 54th section of the revenue act of 1799, c. 128. If that proposition be not true in its utmost generality (as no qualifications are specially stated) the judgment below cannot be maintained; if it be true, then it ought to be affirmed. The act of March 2, 1819, c. 48, having divided the sea coast and rivers of the United States into two great districts, has regulated the trade of coasting vessels bound from one port to another, within either of those districts (in which predicament the vessel, whose case is now before us, is) by those sections of the coasting act of 1793, c. 8, which apply to coasting vessels bound from a district in one state to a district in the same or an adjoining state on the sea coast.

The argument of the defendant's counsel in substance is, that the coasting act of 1793, c. 8, meant in all respects, to regulate the coasting trade, except in a few cases expressly provided for in the revenue act of 1799, c. 128; and that consequently all other provisions of the latter act ought to be applied exclusively to vessels coming from foreign ports; and that the generality of the language of the 54th section of the same act, ought to be restrained to vessels in the latter predicament. To this argument, to a certain extent, I readily accede. The act of 1799, c. 128, in its principal provisions, looks certainly to the foreign trade of the United States, and in many, perhaps in a majority, of its provisions, by express terms, or by necessary implication, applies exclusively to vessels coming from foreign ports. But the primary object of that act being the security of the revenue of the United States, and as auxiliary thereto, the prevention of illegal traffic and smuggling, there is no necessary conclusion that its provisions may not, when general, apply to all vessels whatsoever. There is no pretence to say, that illegal traffic and smuggling, and frauds upon the revenue, may not be committed by vessels engaged in the coasting trade; or that there is in the coasting act of 1793, c. 8, any provision in pari materia, with the 54th section of the act of 1799. And it would be still more difficult to affirm, that this section was not as useful and salutary in relation to the coasting as the foreign trade of the United States. If there had been in the coasting act an express provision upon the same subject matter, the argument would have been more cogent and satisfactory. In some of the early laws of the United States, provisions were inserted, equally applicable to vessels in the foreign and domestic trade. Gradually a separation in respect to many of the most important regulations, from the difference of their nature and requirements, has taken place between them. But it remains to be proved, that the separation has been entire. It is asked, why in the 18th section of the act of 1799, c. 128, a special provision is made as to coasting vessels, and to locks and fastenings on them, if the 54th section be also applicable to them? The answer is, that this provision is made for a special case, applicable to vessels in the foreign trade, coming into Ocracoke Inlet, and allowed to discharge their cargoes into lighters and coasting vessels, to be transported to any port of entry or delivery connected with the inlet, without previously paying or securing the duties due on their cargoes. But for this provision, the cargoes so unladen, would be forfeited; and but for the regulation as to the cargoes being under locks and fastenings, there would be great danger of frauds and smuggling. By the general coasting act no coasting vessel can regularly have on board any foreign dutiable goods, the duties on which have not been previously secured or paid.

It is worthy of notice, too, that the 54th section of the act of 1799, is almost a literal transcript of the 31st section of the revenue act of August 4, 1790, c. 35 [1 Stat. 145]. It was therefore, a regulation in existence at

the time of the passage of the coasting act of 1793, and is in no wise inconsistent with it, and has been re-inforced and re-enacted since that period. There is no pretence to say, that it was repealed by the act of 1793, or that its subsequent operation has been, or could be, restrained by it. It stands then, upon its own terms and connection for its reasonable exposition. The 54th section declares, that it shall be lawful for all "collectors, &c. to go on board of ships or vessels in any port of the United States, or within four leagues of the coast thereof, if bound to the United States, whether in or out of their respective districts, for the purpose of demanding the manifests aforesaid, and of examining and searching the said ships or vessels." It is said by the defendant's counsel, that the qualification, "if bound to the United States," plainly shews, that vessels from foreign ports only, are intended, and not coasting vessels. This is not admitted. These words are evidently a qualification of the preceding words, and restrain them to such vessels within four leagues of the coasts as are bound to the United States, in contradistinction to vessels bound to foreign ports. A provision in substance as broad, and applicable to all vessels, is inserted in the coasting act (coasting act of 1793, c. 8, § 27 [1 Stat. 315]), and authorizes revenue officers to go on board all vessels, to inspect, search, and examine the same, and if any breach of the laws of the United States (not merely of the coasting act) is committed, whereby the vessel, or goods on board, are forfeited, to seize the same. If the 54th section had stopped after the words, "for the purpose of demanding the manifests aforesaid," I should have been strongly inclined to think that these words would have restrained the meaning to manifests of vessels from foreign ports, and have excluded coasting vessels. But the supplementary words, "and of examining and searching the said ships or vessels," seem to me to enlarge the power so as to reach coasting vessels, which revenue officers are undoubtedly entitled to search and examine by the very terms of the coasting act. There are no other words in the section imposing any limitation upon the general phraseology. The court is therefore called upon to interpose one, where the sense does not require it, and where no public mischief or inconvenience justifies such a limitation. We know that by the terms of the coasting act, permits under some circumstances, are necessary before unlading the cargoes of coasting vessels; and a forfeiture takes place, for having smuggled goods on board; and sometimes for omitting to put goods into the manifests. In point of fact, the practice is proved to be, and always to have been, in conformity with the construction of the law, which is asserted by the district attorney. I see no evil in such a construction; and I perceive much public good and

convenience in it. I am not therefore prepared to take a case out of the letter which seems fairly within the spirit of the section; or to deprive the language of its natural force, simply because it stands in a law pointing in its general direction, to vessels engaged in foreign trade. I am driven, therefore, to say, that in my judgment, the judgment of the district court ought to be reversed. Judgment reversed.